IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:12-CV-00610-F

CITY GRILL HOSPITALITY GROUP, INC.,

     Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY,

     Defendant.

**DEFENDANT'S MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND MOTION FOR
RELIEF DUE TO DEFENDANT'S
SPOLIATION OF RELEVANT
EVIDENCE**

COMES NOW the Defendant, Nationwide Mutual Insurance Company ("Nationwide") and respectfully submits this Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment and Motion for Relief Due to Defendant's Spoliation of Relevant Evidence [D.E. 31].

## ISSUES PRESENTED AND BRIEF ANSWER

1. Whether Plaintiff is entitled to partial summary judgment on the issue of coverage?

   **No. There are material disputes of fact as to whether Nationwide was entitled to deny coverage under the insurance contract, based on Plaintiff's dishonest or criminal acts and failure to cooperate in the claims process.**

2. Whether Nationwide "spoiled" relevant evidence and whether, as a sanction, this Court should strike Defendants' expert witnesses and grant summary judgment to Plaintiff?

   **No. First, this is simply not a spoliation case. Second, any failure of Nationwide to collect evidence available to it – but not in its possession – does not rise to spoliation. Third, Nationwide never had a duty to collect evidence from the Plaintiff, and preserve it for the Plaintiff. Fourth, any prejudice to the Plaintiff is minimal. Fifth, even if this Court concludes that there was spoliation, a sanction of dismissal would be unwarranted because there is no evidence of malice, bad faith, or other wrongful conduct. Finally, Plaintiff's spoliation motion is untimely.**

## STATEMENT OF THE CASE

After intentionally setting fire to the Miami Subs restaurant in Fayetteville, North Carolina, Plaintiff sued Nationwide in an attempt to collect insurance proceeds. Plaintiff cannot make out a prima facie case of coverage because there are disputed issues of fact as to whether Nationwide was entitled to deny coverage based on the Plaintiff (or its agents) intentionally setting the fire, or because Plaintiff (or its agents) made material misrepresentations during the claims process.

Regarding spoliation, there is no evidence that Nationwide did anything other than hire experts to investigate the cause and origin of the fire. Nationwide's experts retained, photographed, and examined the Ion IQ wireless headset device's printed circuit boards ("PCBs") and left them at the scene of the fire, which was always in the control and possession of Plaintiff. There is no evidence of bad faith, malice, concealment, or intentional destruction. There was no duty for Nationwide's experts to preserve the PCBs, as they did not believe it was a cause of the fire and because, at all times, the PCBs were physically possessed by Plaintiff.

Plaintiff has lost or destroyed the PCBs, and now blames Nationwide and its experts for the loss. City Grill Hospitality Group, Inc. ("City Grill") asks the Court to strike Nationwide's expert witnesses, who will testify at trial that the fire which destroyed the Miami Subs restaurant was incendiary; it was caused by an open flame and was intentionally set. Plaintiff has waited until discovery closed to bring this spoliation motion. Plaintiff never mentioned spoliation, nor given Nationwide any notice at any time that a particular piece of evidence should be preserved. Because Plaintiff waited until after discovery, this spoliation motion is based on Plaintiff's subjective speculation; not undisputed facts developed in discovery. Finally, Plaintiff had

plenary access, control, and possession of all the physical evidence in this case. As a result, it would be error to grant a spoliation motion or impose a sanction in this case.

In summary, Plaintiff incorrectly moves to strike all of Nationwide's expert witnesses and have judgment entered in its favor, because Nationwide's experts did not take charred debris out of Plaintiff's possession, seal Plaintiff's debris in evidence bags, and maintain safe custody of Plaintiff's evidence for it. Instead, Nationwide's experts – Mr. Lacy and Mr. Martini – left the PCBs with Plaintiff and Mr. Diamantopoulos (an officer of Plaintiff City Grill). This is simply not spoliation.

## STATEMENT OF THE FACTS

Nationwide retained Donan Engineering to conduct an origin and cause investigation of the fire that occurred at the Miami Subs on 552 North McPherson Church Road in Fayetteville, North Carolina. Mr. Hunter Lacy was assigned as the primary fire origin and cause investigator. [Lacy Dec. ¶ 3]. Mr. Lacy first attempted to contact Mr. Dimitrios Diamantopoulos on January 25, 2012 to schedule a time to inspect the premises, but was only able to leave a voice mail message. [Lacy Dec. ¶ 4]. Mr. Diamantopoulos did not return Mr. Lacy's telephone call. *Id.* Mr. Lacy again called Mr. Diamantopoulos on the morning of January 26, 2012, had a telephone conversation with him, and made arrangements to meet him at the fire scene that same morning. [Lacy Dec. ¶ 5].

Mr. Diamantopoulos had keys to the building; each morning he unlocked the building before Mr. Lacy and Mr. Martini entered it and each evening he locked the building. [Lacy Dec. ¶ 7, 15; Martini Dec. ¶ 13]. Nationwide's experts' investigation took 3 days.

Mr. Lacy first examined the fire scene on January 26, 2012. *Id.* As part of his fire investigation, he observed damage on the walls, soot, and other damage caused by the fire.

[Lacy Dec. ¶ 11]. The damage often indicates a fire pattern that an investigator can examine. *Id.* As described in Mr. Lacy's Federal Report, the fire patterns indicated that the fire started on the ground. [Lacy Dec. ¶ 12]. Mr. Lacy also observed a rectangular shaped pattern on the wall called a protective area. [Lacy Dec. ¶ 13]. This pattern tended to eliminate the HME Ion IQ wireless transmitter as a competent ignition source for the fire. *Id.* If the fire had originated from the HME Ion IQ wireless transmitter, the fire pattern on the wall would have been different. *Id.* Therefore, Mr. Lacy eliminated the wireless transmitter as a competent ignition source. [Lacy Dec. ¶ 14].

Mr. Lacy never told Mr. Diamantopoulos that he or Nationwide was in charge of the building or the investigation. [Lacy Dec. ¶¶ 7-8]. Instead, Mr. Lacy was always let into the building by Mr. Diamantopoulos and the building was always locked by Mr. Diamantopoulos. Furthermore, the SBI and Fayetteville police department also conducted their own independent investigation in the building at the exact same time.

Mr. Lacy decided that there were various electrical issues that needed to be inspected and contacted an electrical engineer. *Id.* Mr. Henry Martini, an electrical engineer employed by Donan Engineering, conducted his initial investigation of the fire scene on January 30, 2012. [Martini Dec. ¶¶ 2, 4]. Mr. Martini was assigned to identify all potential electrical sources of ignition for the fire and to determine if any of those electrical sources played a role in causing the fire. [Martini Dec. ¶ 3]. He inspected the electrical service components, electrical circuits, and fixtures. [Martini Dec. ¶¶ 5-8]. He concluded that none of these items caused or contributed to the fire. *Id.*

Mr. Martini also examined the debris reported to have been recovered from the area of the rear drive through window which was determined to be the origin of the fire. [Martini Dec. ¶

4

9].  Some of the debris had been relocated to the counter.  *Id.*  In the debris, Mr. Martini observed and examined one large and several smaller printed circuit boards ("PCBs").  [Martini Dec. ¶ 10].  It was later discovered that the PCBs were part of an HME Ion IQ or wireless base station.  *Id.*  Mr. Martini eliminated the inspected debris and PCBs as competent ignition sources for three reasons.  *Id.*  First, there was no evidence of an electrical failure that would have been indicated by localized or isolated heat damage to the PCB material.  *Id.*  Second, there was no evidence of either a large scale or small scale failure in the device.  [Martini Dec. ¶ 11].  Third, he examined the PCBs on both sides and found no holes in the boards.  *Id.*  The absence of holes was significant because typically when a PCB is the cause of a fire, there is a hole in the board. *Id.*  Because Mr. Martini ruled out the PCBs as a potential source of the fire, he did not take the PCBs into his custody.  [Martini Dec. ¶ 12].

Mr. Martini completed two reports, a Claim report and a Federal Report.  [Martini Dec. ¶ 14].  Although the Federal Report was more detailed, both reports addressed all of the inspected electrical items (including the PCBs) that were eliminated as sources of ignition for the fire.  *Id.* Both the Claim Report and the Federal Report specifically included photographs of the PCBs that were identified as photographs 33, 34, and 35.  *Id.*

Both Mr. Lacy and Mr. Martini conducted their investigations in accordance with Section 921 of the National Fire Protection Association's National Fire Codes [D.E. 37-11, p. 25; D.E. 37-13, p. 94].  Under Section 921, if an appliance or other type of equipment is not believed to be part of the ignition scenario, then the provisions recommending that the entire appliance or item be collected as physical evidence do not apply.  [D.E. 37-11, p. 190].

During his investigation, Mr. Lacy saw fire patterns that indicated to him that the fire did not originate anywhere other than the floor below drive through window number one.  [D.E. 37-

11, pp. 190-191]. On January 30, 2012, Mr. Martini eliminated the multiple electrical components in the area of drive through window number one including the PCBs. *Id.* Consistent with the provisions of Section 921, if Mr. Martini was able to rule out a potential electrical source of ignition, he left the item intact in the building. [Martini Dec. ¶ 13]. Mr. Lacy did not collect or discard any of the items on the counter at any time during or after his investigation. [Lacy Dec. ¶ 16].

At all times during Mr. Martini's investigation, Mr. Diamantopoulos had access to and control of the building. [Martini Dec. ¶ 13]. At all times during Mr. Lacy's investigation, if he wanted to access the building, he had to do so through Mr. Diamantopoulos. [Lacy Dec. ¶ 15]. Mr. Lacy initiated the fire scene examination on January 26, 2012 and continued on January 27, 2012. [Lacy Dec. ¶ 6]. Mr. Lacy also examined the fire scene on January 30, 2012. *Id.* Each day during the investigation, Mr. Diamantopoulos unlocked the restaurant for Mr. Lacy in the morning and locked the building back each evening. *Id.* Mr. Lacy did not have a key to the building. [Lacy Dec. ¶ 7]. Mr. Diamantopoulos had full access to the building during and after Mr. Lacy's investigation. *Id.* Neither Mr. Lacy nor Mr. Martini has any knowledge of when or how the PCBs were discarded. [Martini Dec. ¶ 13; Lacy Dec. ¶ 16]. The PCBs and all other electrical items eliminated as potential sources of fire were left in the building when Mr. Lacy's and Mr. Martini's respective investigations were concluded on January 30, 2012. *Id.*

Nationwide had no way of knowing that City Grill would not preserve the contents of the Miami Subs, including the PCBs. The first time that Nationwide or its experts knew that the PCBs were missing was November 2012, during a subsequent visit to the loss site after this lawsuit had been filed. City Grill had allowed the entire building to be stripped clean, which included the destruction or loss of the PCBs.

6

## ARGUMENT

I. **City Grill is not entitled to partial summary judgment on the issue of coverage because there exist disputes of material fact as to whether the insurance contract was breached by City Grill's own conduct.**

Under the insurance policy at issue, Nationwide was entitled to deny coverage for a variety of reasons. There remains a material dispute between the parties, which will have to be resolved by a jury, as to whether the insurance contract requires Nationwide to indemnify City Grill.

City Grill conflates the burden at trial – as explained by *Nelson v. Hartford Underwriters Ins. Co.*, 177 N.C. App. 595, 606 (2006) (quoting the earlier case of *Hobson Const. Co. v. Great American Ins. Co.*, 71 N.C. App. 586, 590 (1984)) – with the movant's burden at summary judgment under Rule 56 of the Federal Rules of Civil Procedure. At trial, the policyholder must establish a prima facie case of "bringing itself within the insuring language of the policy." *Hobson*, 71 N.C. App. at 590. The burden then shifts to the insurer "to prove that a policy exclusion excepts the particular injury from coverage." *Id.* At summary judgment the moving party – here, City Grill – bears the burden proving that there is no dispute of material fact. That includes both proving that City Grill was within the insuring language of the policy *and* proving that there are no disputes of material fact regarding Nationwide's coverage defenses (such as the dishonesty and criminal acts exclusion). Because the parties remain in disagreement over whether the dishonesty and criminal acts exclusion applies, summary judgment is not proper.

First, under the terms of the insurance contract, there is no coverage for "[d]ishonest or criminal acts." [D.E. 39-1, p. 47]. Nationwide concluded that Mr. Diamantopoulos, the owner of City Grill, committed a dishonest or criminal act when he intentionally burned the Miami Subs restaurant. This determination was also made by the investigating law enforcement officers

7

[D.E. 37-2, p. 123; D.E. 37-17, pp. 16, 114-16] and supported by Donan Engineering's employees [D.E. 37-11, pp. 161-62; D.E. 37-13, pp. 135-36].

Plaintiff's own cause and origin expert, Mr. Booth, stated that there was an equal chance that Mr. Diamantopoulos intentionally set the fire, versus the chance that the Ion IQ device set the fire. [D.E. 37-9, pp. 207-09].

Second, City Grill was required to "cooperate with [Nationwide] in the investigation or settlement of the claim." [D.E. 39-1, p. 51]. Nationwide denied coverage because Mr. Diamantopoulos made material misrepresentations of fact regarding the property, and its condition, during the claims process. For example, he gave differing accounts of where he was on the morning of the fire. Detective House believed that Mr. Diamantopoulos was lying. [D.E. 37-2, p. 114]. City Grill's own expert noted that Mr. Diamantopoulos "has not said the same story every time." [D.E. 37-9, p. 115].

Plaintiff has continually denied intentionally setting the fire, and continually asserted that there is coverage under the policy. As a result, there are material disputes of fact as to whether there was coverage under the policy. Further, if a jury concludes that Mr. Diamantopoulos' conduct rose to the level of material misrepresentations during the claims process, Nationwide was separately entitled to deny coverage and there is no claim for breach of contract.

## II. Failure to collect evidence available to Nationwide, but not in possession of Nationwide, does not constitute spoliation.

Plaintiff's spoliation motion fails on the very first element: there is no proof that Nationwide had control of the PCBs when they went missing.

To prove spoliation, Plaintiff must prove three elements:

(1) The party having control over the evidence had an obligation to preserve it when it was destroyed or altered;

8

(2) The destruction or loss was accompanied by a "culpable state of mind;" and

(3) The evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoiled evidence.

*In re Jemsek Clinic, P.A.*, 2013 WL 3994666 (Bkrtcy. W.D.N.C. Aug. 2, 2013) (quoting

*Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 509 (D. Md. 2009)).

City Grill's brief gets the facts flatly wrong when it states "the PCBs have disappeared, and it is clear that the last persons to have knowledge of its location were Lacy and Martini." [D.E. 32, p. 13]. First, there is no factual support for this statement. Second, both Lacy and Martini have declared that the PCBs were left inside the Miami Subs building on January 30, 2012 when their on-site investigation was completed. [Lacy Dec. ¶ 14; Martini Dec. ¶¶ 12-13]. As Mr. Martini states, after eliminating these items as a potential cause, he chose not to take the PCBs into custody. Instead, he left them on the counter of the Miami Subs, under the custody and control of Mr. Dimitrios Diamantopoulos.

Plaintiff has failed to come forward with conclusive evidence that the PCBs were in the possession of Nationwide, or Nationwide's experts, when they went missing or were destroyed. Instead, the evidence shows that during Nationwide's loss investigation, Nationwide's experts photographed and examined the PCBs at the Miami Subs. At the end of each day, Nationwide's experts would leave and Mr. Diamantopoulos would re-lock the doors to the building. [Lacy Dec. ¶¶ 6, 7, 15]. When Nationwide completed its on-site investigation on January 30, 2012, the PCB boards remained in the building. [Lacy Dec. ¶¶ 14-16].

Plaintiff's brief also reveals the tenuous nature of its speculative claim of spoliation:

> In the light most favorable to Defendant, Lacy, who was investigating the Premises fire for Defendant and upon whose report, Defendant based its Denial Letter, ***probably*** failed to take proper care to prevent accidental destruction of probative evidence, the PCBs, but Plaintiff has also raised the issue of whether or not Lacy deliberately destroyed probative evidence prior

9

> to the filing of its action and/or apparently made material misstatements in Lacy's Claims Report for the purpose of hiding the existence of the PCBs. **If** that be so, the facts of this case **would** establish the high degree of culpability on the part of the Defendant.

[D.E. 32, p. 12] (emphasis added). This is only City Grill's speculation – *probably*, *if*, *would* – which is unsupported by facts in the record. Lacy's own sworn declaration indicates that he left the PCBs at the scene on January 30, 2012. Mr. Diamantopoulos then locked the building. [Lacy Dec. ¶¶ 14-15].

In short, Plaintiff's spoliation argument cannot succeed because it cannot establish even the first element of spoliation. The Sixth Circuit was confronted with a similarly stretched spoliation argument just two months ago. It quickly concluded that "a failure to collect evidence that may or may not have been available for collection is very different from the intentional destruction of evidence that constitutes spoliation." *United States v. Greco,* 2013 U.S. App. LEXIS 17264 (6th Cir. Aug. 20, 2013). The evidence which City Grill claims was "spoiled" – the PCBs – were not even in Nationwide's possession, "as it must be in spoliation cases." *Id*. Finally, City Grill never asserts, nor advances any evidence, that Nationwide or its experts' conduct was motivated by a culpable or malicious state of mind – the state of mind "that is a prerequisite for the application of the spoliation presumption." *Id*.

### III. Faced with a nearly identical factual situation, in *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co*., the Sixth Circuit found no spoliation by Nationwide.

The Sixth Circuit Court of Appeals reversed a district court, remanded a case, overturned a jury verdict, and ordered a new trial, when the trial judge abused his discretion ruling on a spoliation motion and struck Nationwide's experts from testifying at trial. *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801 (6th Cir. 1999) (overruled regarding choice of law only). There, the Sixth Circuit concluded that even when Nationwide's fire investigators

intentionally removed a wiring harness from a car, this was not the type of "intentional destruction" required for spoliation, and there was minimal prejudice to Ford because Ford had sufficient notice and an opportunity to inspect. Following the reasoning of *Ford*, this Court should decline to find spoliation here because Defendant Nationwide (1) never took possession of the PCBs, (2) never destroyed them, (3) Plaintiff had access and control of them at all times, and (4) Plaintiff could have examined them at any time.

In *Ford*, a one-day old Lincoln Town Car was stored in a family's garage when a fire caused damage to the garage and house. *Id.* at 802. Nationwide provided fire insurance coverage and paid the family for the fire damage. It then brought a subrogation action against Ford. Nationwide alleged that the Lincoln's defective wiring caused the fire. *Id.* at 803.

Nationwide's first expert arrived three days after the fire and inspected the remains of the burnt car inside the garage. Nationwide's second expert arrived four days after the fire. On the same day, Nationwide alerted Ford that its vehicle may have been the source of the fire and invited Ford's expert to inspect the vehicle. On the fifth day, Nationwide removed the car to another location, which was disclosed to Ford. Approximately two months later, Nationwide sent a third expert to inspect the car. This third expert removed part of the car's wiring harness for the purpose of preservation. Ford was not notified of this.

Ford moved to exclude all of the third expert's testimony as a sanction for removing the wiring harness, "an act Ford characterized as 'spoliation' of evidence at the fire scene." The district court incorrectly agreed that this was spoliation and, while letting the witness testify, severely limited the witness's testimony. *Id.* at 803. The Sixth Circuit reversed these rulings as an abuse of discretion and found that the conduct of Nationwide's experts was not spoliation.

The Sixth Circuit recognized that there was no evidence in the record that suggested Nationwide intentionally altered or destroyed the evidence before Ford had an opportunity to inspect it. The Sixth Circuit defined "intentional destruction," for the purposes of spoliation, not as the knowing and willful removal of evidence, but as removal with the "purpose of rendering it inaccessible or useless to the defendant in preparing its case; that is, spoiling it." *Id*. at 804. It found that while Nationwide's experts had intentionally removed the wiring harness from the car to inspect it, this was not the type of intentional destruction which gave rise to a spoliation inference. The reason for removal was not to spoil or prevent the defendant from gaining access to the wiring harness. *Id*.

Defendant Nationwide currently has a stronger case against spoliation here than it did in *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801 (6th Cir. 1999). There is ***no sworn evidence*** that Nationwide destroyed the PCBs. Instead, the evidence shows that City Grill had the opportunity to inspect the PCBs at any time after the fire. At no point in time did Nationwide or its experts have keys to the building. City Grill had complete control and access both before Lacy and Martini arrived, and every day afterwards. City Grill had adequate time – before, during, and after Nationwide's inspection – to inspect the PCBs.

There is no evidence that moving the PCB boards from the floor to a table, photographing them, and doing a visual inspection caused any damage to the PCBs. Furthermore, there is no evidence that Lacy and Martini's decision not to place the PCBs into preservation bags was a decision to purposefully spoil or prevent City Grill from gaining access to them. In fact, Nationwide's experts left the PCBs in the possession of City Grill so that City Grill would have complete access to the PCBs to conduct its own examination. [Lacy Dec. ¶¶ 14-16; Martini Dec. ¶¶ 12-13].

City Grill had sufficient notice and control of the Ion IQ boards. Nationwide's expert's choice not to place the boards in preservation bags, and instead leave the boards with City Grill, was not simply not spoliation. In short, spoliation is the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction. *U.S. v. Boxley*, 373 F.3d 759 (6th Cir. 2004). Defendant Nationwide did not destroy the PCBs, and instead left them in the custody, care, and control of City Grill. Because there is no evidence of intentional destruction, City Grill's spoliation motion must be denied.

### IV. Nationwide had no duty to preserve the PCBs.

Prior to litigation commencing, the duty to preserve only adheres when "a party reasonably should know that the evidence may be relevant to anticipated litigation." *Evans v. Medtronic, Inc*., 2005 WL 3547240 at *13 (W.D.Va. Dec. 27, 2005) (quoting *Silvestri v. General Motors, Corp*., 271 F.3d 583, 591 (4th Cir. 2001). "If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Silvestri*, 271 F.3d at 591.

Mr. Martini conclusively ruled out the Ion IQ device as a potential source of the fire. [Martini Dec. ¶¶ 9-13]. As a result, the PCBs which were part of the Ion IQ – like light fixtures and other evidence which Mr. Martini eliminated as a cause of the fire – were not placed in preservation bags. At that point, the PCBs were left with City Grill. [Lacy Dec. ¶¶ 14-15; Martini Dec. ¶ 12]. Nationwide had no duty to preserve evidence which it had determined did not cause the fire and which it left in the custody of Mr. Diamantopoulos and City Grill.

Nationwide's experts left the evidence in the control of Mr. Diamantopoulos and City Grill, and had no way of knowing that City Grill would not preserve the contents of the building.

The first time Nationwide's experts learned that the interior of the Miami Subs restaurant had been stripped clean was in November 2012, after the lawsuit had been filed, and they visited the scene for a further investigation. Thus, City Grill's spoliation motion should be denied.

**V.      Even if this Court finds evidence of spoliation, under the Fourth Circuit's test in** *Silvestri v. General Motors***, Nationwide's conduct does not warrant the sanction City Grill requests.**

Even if this Court concludes that Nationwide spoiled evidence, there is no evidence of bad faith. An adverse inference or the drastic sanction of striking Nationwide's experts is therefore inappropriate. Although Plaintiff correctly identifies *Silvestri v. General Motors, Corp.*, 271 F.3d 583, 593 (4th Cir. 2001) as establishing the correct test in this circuit, *Silvestri* is inapposite because the spoliating conduct there arose where the plaintiff had both (1) sole possession of the evidence and (2) that piece of evidence was indisputably the most important piece of evidence in the case.

**a.   *Silvestri v. General Motors* established a two-prong test applicable to dismissal or striking evidence: this Court must consider both the egregiousness of the conduct and the effect of the conduct on the litigation.**

As a threshold matter, the Court must first conclude that spoliation actually occurred. Here, Nationwide did not destroy the PCBs, thus there was no spoliation of any evidence. If the Court determines that there is spoliation, it must then consider the proper sanction.

"[T]o justify the harsh sanction of dismissal, the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the

ability to defend the claim." *Silvestri v. General Motors, Corp.*, 271 F.3d 583, 593 (4th Cir. 2001).

In *Silvestri*, the plaintiff's attorney retained two accident reconstructionists to inspect the damage to plaintiff's car prior to filing suit against General Motors for failure of an airbag to deploy during a collision. *Silvestri*, 271 F.3d at 586. One of the experts specifically told the plaintiff's attorney that the car needed to be preserved so that General Motors would have an opportunity to inspect it. *Id.* Despite the advice, neither the plaintiff nor his attorney made any attempt to preserve the vehicle or notify General Motors until almost three years later when the lawsuit was filed. *Id.* at 587. During the intervening three years, the car was repaired to its original, pre-wreck state. *Id.*

The Fourth Circuit emphasized that the plaintiff's attorney knew that the vehicle was a central piece of evidence in the case against General Motors. Further, the plaintiff was reminded that the evidence should be preserved or that General Motors should have been notified of the car's existence. *Id.* at 593. The panel stated that it could not determine whether the spoliator's conduct was deliberate or negligent, because it could not conclude that plaintiff's attorney simply ignored his preservation responsibility through carelessness. *Id.* at 594. Therefore, the Court turned to the second prong of the analysis and considered the effect of the spoliator's conduct on General Motors' ability to defend the claim. *Id.* In concluding that the spoliation was "highly prejudicial," the Court considered that it denied General Motors access to the ***only*** evidence from which it could develop defenses. *Id.*

Plaintiff's conduct prevented General Motors from developing a "crush" model of the car to determine the speed of impact and the direction of the forces on the car, both important factors in determining whether the airbag should have deployed. *Id.* Further, only one of plaintiff's

experts took a crush measurement and he did not write it down; General Motors needed more than one crush measurement and the one that plaintiff's attorney took was "unreliable." *Id.* The Court determined that, of the evidence that was preserved, it was incomplete and indefinite. *Id.* Therefore, the Court would not require General Motors to rely on the evidence collected by the plaintiff's experts because it would result in "irreparable prejudice." Notably, the Fourth Circuit considered the practical effect of allowing the plaintiff's claims to proceed:

> short of dismissal, the district court would have been left to formulate an order that created facts as established or that created presumptions. But when Silvestri presents vehicle data as his only evidence of a product defect and that data is incomplete and perhaps inaccurate, *the court would have no basis for determining what facts should be taken as established*. On the other hand, *if the court denied Silvestri's experts from testifying, as would be an alternative, then Silvestri would have no case at all*.

*Id.* at 594-595.

### b. *Silvestri* establishes the test, but is inapplicable because Nationwide did not exclude City Grill from possession of the PCBs.

*Silvestri* is largely inapplicable because Mr. Silvestri had sole access and control of the wrecked automobile, and waited over three years to give notice to General Motors. Here, Plaintiff had sole custody and control of the Miami Subs premises before Nationwide's expert witnesses visited the scene, each night after the experts visited, and after Nationwide's inspection. Unlike in *Silvestri* – where General Motors was totally excluded from examining the evidence – here the movant had nearly complete control and ownership of the PCBs, and could have inspected them at any time.

Even if this Court finds spoliation, an adverse inference instruction is improper. That is because spoliation is concerned with policing misbehavior of the parties. *See, e.g.*, *Bolling*, 930 F. Supp. at 238 ("[T]he spoliation doctrine applies only to misbehavior by parties."); *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446 (4th Cir. 2004) (declining to find spoliation because of lack

of evidence that alleged spoliator abused judicial process). An adverse inference "cannot be drawn merely from [a party's] negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *Hodge*, 360 F.3d at 450 (4th Cir. 2004). Nationwide's experts left the PCBs in the Miami Subs building that was secured by Plaintiff. Nationwide's experts did not remove the PCBs from the scene, nor did they destroy any evidence. As a result, no adverse inference is proper.

      **c. *Silvestri* was recently applied by a neighboring district court, which declined to enter judgment for the movant because there was no evidence of bad faith and because there was no undue prejudice.**

A district court in Virginia has recently been confronted with a similar spoliation motion and applied the *Silvestri* analysis. *Musick v. Dorel Juvenile Group, Inc.*, 2011 WL 5029802 (W.D.Va. Oct. 24, 2011). There, the plaintiff was a child who was riding in a child-safety seat inside of a Ford Windstar van. The child was injured during an automobile wreck, and sued the maker of the child-safety seat that she was riding in. The child-safety seat was preserved, but the wreckage of the Ford Windstar van had been destroyed. The court noted that the plaintiff (who was resisting a spoliation motion) did not instruct that the vehicle be destroyed, nor try to hide the van's post-accident condition. Instead, the plaintiff had preserved the car seat and she willingly shared her photographs of the van with the defendant. The court also distinguished the circumstances from *Silvestri*, a products liability lawsuit against General Motors, where "[t]he plaintiff's attorney unquestionably knew that the vehicle was the 'central piece of evidence' and had been reminded that it should be preserved."

Here, as in *Musick*, photographs of the missing device were willingly shared between the parties. Nationwide's experts had no reason to believe that the PCBs should have been

specifically placed in preservation bags because they were photographed, examined, and determined not to be the ignition source of the fire. Nationwide's experts did not retain every piece of evidence from the building, such as light fixtures, which had been ruled out by Nationwide's experts as potential causes. Plaintiff did not request that the PCBs be preserved or specifically bagged by Nationwide. If Plaintiff believed that the PCBs were potential causes of the fire, Plaintiff had physical possession of the PCBs and the building for an extended period of time, during which time its experts could have examined them.

Turning to the second prong of the *Silvestri* test, the district court in *Musick* considered that there remained sufficient evidence for the product manufacturer to build a "vigorous defense." *Id*. at *3. Dorel had access to post-accident photographs of destroyed evidence and was "able to secure favorable opinions from expert witnesses." *Id*. Because of the availability of other evidence to the moving party, it would be inappropriate to enter judgment on the ground of spoliation. *VFI Assocs., LLC v. Lobo Mach. Corp*., 2010 WL 4868110 at *1-2 (W.D.Va. Nov. 22, 2010).

> **d. City Grill's reliance on *King v. American Power Conversion Corp*., 181 Fed. Appx. 373 (4th Cir. 2006) (unpublished, per curiam) is also misplaced because, unlike in *King*, City Grill always had custody and possession of the Ion IQ PCB boards.**

Plaintiff argues on brief that this case is factually similar to an unpublished, per curiam Fourth Circuit opinion. [D.E. 32, pp. 16-17]. The critical difference between this case and *King v. American Power Conversion Corp*., 181 Fed. Appx. 373 (4th Cir. 2006) is that here, Plaintiff maintained physical possession of the PCBs. Because neither Nationwide, Mr. Lacy, nor Mr. Martini took custody of the PCBs, and instead left them inside the Miami Subs restaurant, *King* is inapplicable.

In *King*, after a fire event, an expert witness took physical possession of an electrical power supply unit, which could have been a potential cause of the fire in question. *Id*. at 375. The *King* plaintiff knew this, and the plaintiff's attorney contacted the expert regarding inspections of the device. *Id*. This conversation was reflected in a follow-up letter, where plaintiff's counsel offered to take possession of the physical evidence in question. *Id*. On multiple other occasions, plaintiff's counsel sought to inspect the evidence which was indisputably in the custody of the expert, and repeatedly offered to take custody of the evidence. *Id*. Nonetheless, the expert witnesses disposed of the evidence instead of preserving it or returning it to the plaintiff or plaintiff's counsel. *Id*. at 375-76. Defendant, nor any of defendant's experts, ever had any opportunity to examine the power supply unit. *Id*. In that circumstance, the Fourth Circuit found that the ultimate sanction of dismissal was appropriate.

The facts of *King* are nearly the opposite of the facts present here. In *King*, an expert witness took possession of the device. *Id*. at 375. Here, both Mr. Lacy and Mr. Martini left the PCBs in the custody of City Grill and Mr. Diamantopoulos. [Lacy Dec. ¶¶ 14-15; Martini Dec. ¶ 12]. In *King*, dismissal was appropriate because American Power, the defendant, never had an opportunity to examine the power supply. *Id*. at 376. Here, City Grill had possession of the PCBs before Mr. Lacy and Martini arrived, during their examination, and after they left.

VI. **Plaintiff's spoliation motion – filed after discovery has closed – is untimely.**

District courts regularly deny spoliation motions as untimely. *See, e.g., Goodman v. Praxair Servs. Inc*., 632 F.Supp.2d 494, 506 (D. Md. 2009) (denying plaintiff's spoliation motion which was filed with summary judgment brief and by summary judgment deadline). Arguments of spoliation should be made by "appropriate discovery motion" and not in "opposition to summary judgment." *Ferrone v. Onorato*, 2007 WL 2973684 (W.D.Pa. Oct. 9, 2007). Indeed,

the "[k]ey to the discretionary timeliness assessment" is "how long after the close of discovery" the motion is made. *Goodman*, 632 F.Supp.2d at 506.

When a plaintiff fails to raise any concerns "during the discovery phase or bring them to the attention of the" Court, a finding of untimeliness is proper. *Glenn v. Scott Paper Co.*, 1993 WL 431161 (D.N.J. Oct. 20, 1993).

Spoliation motions should "be filed as soon as reasonably possible." *Goodman*, 632 F.Supp.2d at 506. There has been no explanation by Plaintiff of why it waited until summary judgment to bring this spoliation motion when, based on its own argument, it allegedly knew this evidence was relevant and necessary ***over a year and a half ago*** in February 2012. That is because "resolution of spoliation motions [is] fact intensive." *Id*. at 508. Such motions require a court to weight several factors:

- "when the duty to preserve commenced,"

- "whether the party accused of spoliation properly complied with its preservation duty,"

- "the degree of culpability involved,"

- "the relevance of the lost evidence in the case,"

- "and the concomitant prejudice to the party that was deprived of access to the evidence because it was not preserved."

*Goodman*, 632 F.Supp.2d at 508.

Often, "before ruling on a spoliation motion, a court may have to hold a hearing." *Id*. at 508. Additionally, the "court may order that additional discovery take place either to develop facts needed to rule on the motion or to afford the party deprived of relevant evidence an additional opportunity to develop it from other sources." *Id*. "The least disruptive time to

undertake this is during the discovery phase, not after it has closed." *Id*. As a result, "[c]ourts are justifiably unsympathetic to litigants who, because of inattention, neglect, or purposeful delay aimed at achieving an unwarranted tactical advantage, attempt to" bring spoliation motions after the close of discovery. *Id*.

Here, granting City Grill the relief it requests would require reopening discovery. New discovery would be needed as to what happened to the PCBs after January 30, 2012. This would delay trial, which is currently set to begin in approximately eight weeks. City Grill has asked for the drastic remedy of striking all of Nationwide's expert witnesses and awarding summary judgment to Plaintiff. If City Grill had timely made this motion during discovery, additional discovery from other sources could have been developed. There would have also been extensive discovery of exactly what happened to the Ion IQ PCBs; were they lost, were they destroyed, and who was last in possession of them. Perhaps an employee from Riddle Properties – the landlord – actually destroyed the Ion IQ PCBs sometime between January 30, 2012 (the day Mr. Martini and Mr. Lacy left them with City Grill) and November 9, 2012 (the day that plaintiff's expert entered the premises but could not locate the Ion IQ boards) when the inside of the building was stripped clean. The parties do not know, because no discovery was done on this topic. Instead, Plaintiff has sought an unwarranted tactical advantage by waiting until discovery has closed to file its motion. This Court should resist Plaintiff's attempt at obtaining a judgment via a late-filed spoliation motion.

## CONCLUSION

For the forgoing reasons, Defendant Nationwide respectfully requests that the Court deny Plaintiff's spoliation motion, deny Plaintiff's request to strike Nationwide's expert witnesses, and deny Plaintiff's motion for partial summary judgment.

Respectfully submitted, this the 9th day of October, 2013.

/S/ Gemma L. Saluta
Gemma L. Saluta
N.C. State Bar  No. 37032
Rachel E. Daly
N.C. State Bar No. 27777
Womble Carlyle Sandridge & Rice, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone:  (336) 721-3600
Facsimile:  (336) 721-3660
Email:  GSaluta@wcsr.com
            RDaly@wcsr.com

*Attorneys for Defendant Nationwide*
*Mutual Insurance Company*

22

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that, on the 13th day of September, 2013, she filed and served a copy of this **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR RELIEF DUE TO DEFENDANT'S SPOLIATION OF RELEVANT EVIDENCE** by using the CM/ECF system which will send notification of such filing to the parties below.


    Richard M. Wiggins
    James A. McLean, III
    McCoy Wiggins Cleveland & O'Connor, PLLC
    Post Office Box 87009
    Fayetteville, NC  28304
    rwiggins@mccoywiggins.com
    jmclean@mccoywiggins.com

    *Attorneys for Plaintiff*


    */S/ Gemma L. Saluta*
    Gemma L. Saluta
    N.C. State Bar  No. 37032
    Rachel E. Daly
    N.C. State Bar No. 27777
    Womble Carlyle Sandridge & Rice, LLP
    One West Fourth Street
    Winston-Salem, NC 27101
    Telephone:  (336) 721-3600
    Facsimile:  (336) 721-3660
    Email:  GSaluta@wcsr.com
           RDaly@wcsr.com

    *Attorneys for Defendant Nationwide*
    *Mutual Insurance Company*