UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-610-F

CITY GRILL HOSPITALITY GROUP, )
INC., )
               Plaintiff, )
)
   v. ) ORDER
)
NATIONWIDE MUTUAL )
INSURANCE COMPANY, )
               Defendant. )
_____ )

This matter is before the court on the parties' cross motions for summary judgment [DE-27, -31]. The motions have been fully briefed and are ripe for resolution. For the reasons that follow, Nationwide's motion is ALLOWED in its entirety and the claims for breach of the covenant of good faith and fair dealing (part of third claim for relief), breach of the unfair and deceptive practices act (fourth claim for relief), and bad faith refusal to settle[1] are DISMISSED. City Grill concedes that Nationwide is entitled to summary judgment on the claims for intentional infliction of emotional distress, conversion, and breach of fiduciary duty and those claims are also DISMISSED. The parties consent that the breach of contract claim (and

---

[1] The complaint in this case failed to separately identify all of City Grill's claims for relief. For example, Nationwide moves for summary judgment on City Grill's intentional infliction of emotional distress and breach of fiduciary duty claims, but these claims are not listed as separate claims in the complaint. Instead, they are allegations listed underneath City Grill's claim for breach of the covenant of good faith and fair dealing. In addition, the court has read the complaint and it cannot find any language specifically alleging "bad faith refusal to settle," but the parties brief and argue that claim in their motions for summary judgment as well. This is bizarre, and it wastes the court and opposing counsel's time having to parse through the complaint to find the claims for relief. Counsel is admonished to clearly set out each claim for relief in future cases.

presumably Nationwide's related counterclaims, which are not addressed in the motions for summary judgment) are for trial. City Grill's motion for summary judgment and for suppression of Nationwide's expert reports is DENIED.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The court relates the facts in the light most favorable to City Grill. The court notes that the facts are vigorously contested and Nationwide disputes much of City Grill's version of events. City Grill owns a Miami Subs restaurant in Fayetteville, North Carolina, which was partially destroyed in a fire on January 24, 2012. After an investigation, Nationwide denied coverage on the policy for two reasons: (1) it determined the fire was intentionally set; and (2) one of City Grill's individual owners, Dimitrios Diamantopoulos, allegedly made material misrepresentations during the investigation. City Grill thereafter initiated this suit, alleging claims for, *inter alia*, breach of contract, breach of the covenant of good faith and fair dealing, and breach of North Carolina's unfair and deceptive trade practices act.

On the morning of January 24, 2012, Diamantopoulos arrived at the restaurant at approximately 8:15 a.m. According to Diamantopoulos, he collected the previous night's cash proceeds and promptly left to meet a friend for coffee and deposit the money at the bank. The first 911 call reporting the fire came in at approximately 8:40 a.m. The primary dispute in this case is whether Diamantopoulos intentionally set the fire during the period of time between 8:15 and 8:40 or whether an electrical failure caused the fire. Although Diamantopoulos's precise whereabouts after leaving the restaurant are contested, he apparently returned to the restaurant after receiving a call that the building was on fire.

The Fayetteville Fire Department arrived and promptly extinguished the fire. Because the Fayetteville Police Department does not employ fire investigation specialists, the police department contacted the State Bureau of Investigation (SBI) to investigate the fire for possible arson. Special Agent Chadwick Royal of the SBI initially found that the cause of the fire was undetermined. Royal based his conclusion in part on two printed circuit boards ("PCBs")[2] found near the origin of the fire, which he concluded could not be ruled out as a possible ignition source.

Nationwide, City Grill's insurer, also investigated the fire and it hired Donan Engineering to complete the fire origin and cause investigation. Donan assigned Hunter B. Lacy as the primary investigator and the investigation took place from January 26, 2012 through February 2, 2012. Although Lacy informed Diamantopoulos that Lacy was in charge of the premises during the investigation, Diamantopoulos had access to the building throughout the investigation. In fact, Diamantopoulos met Lacy each morning to unlock the building. Lacy determined that an electrical engineer should investigate possible electrical causes and Nationwide hired Henry B. Martini, also an employee of Donan Engineering, for that purpose.

After ruling out all other potential causes, Martini and Lacy determined that the fire was intentionally set. Although Special Agent Royal notified Martini and Lacy that the PCBs were a potential ignition source, Martini and Lacy allegedly ruled out all possible electrical sources.[3]

---

[2] The printed circuit boards were found inside a wireless communication device known as an Ion IQ wireless transmitter. For purposes of simplicity, the court refers to the circuit boards and the transmitters as "PCBs."

[3] When Lacy and Martini notified Agent Royal that they had ruled out electrical causes, he changed his finding to arson. However, the Fayetteville Police Department determined that they did not have sufficient evidence to move forward with charging Diamantopoulos (or anyone else) with arson.

Martini and Lacy's claim reports to Nationwide did not address the PCBs as potential ignition sources of the fire, though Martini's report did include a photograph of the PCBs. After City Grill initiated this lawsuit and raised the possibility that the PCBs caused the fire, Martini and Lacy submitted litigation reports noting that they investigated the PCBs and ruled them out as possible ignition sources.

The PCBs have disappeared. Both Martini and Lacy have submitted sworn statements that they left the PCBs in the custody and control of City Grill after completing their investigations. City Grill's principals do not know what happened to the PCBs after the investigation, though there is some indication in the briefing that the restaurant was cleaned out before City Grill's experts had an opportunity to investigate the fire. *See* Nationwide's Mem. in Opp'n to Pl.'s Mot. for Summ. J. [DE-46] at 6 ("The first time that Nationwide or its experts knew that the PCBs were missing was November 2012, during a subsequent visit to the loss site after this lawsuit had been filed. City Grill had allowed the entire building to be stripped clean, which included the destruction or loss of the PCBs."). City Grill's experts all opine that they cannot determine the precise cause of the fire without physically examining the PCBs. Although City Grill's experts cannot rule out arson as a potential cause, they also cannot rule out the possibility that the PCBs caused the fire.

Because Lacy and Martini's reports indicated the fire was intentionally set and (in Nationwide's view) Diamantopoulos likely started it, Nationwide denied the claim. Nationwide's denial notice rested on two independent grounds: (1) the policy exclusion for dishonest or criminal acts and (2) the policy exclusion for concealment, misrepresentation, or fraud. As to the second ground, Nationwide maintains that Diamantopoulos made material

4

misrepresentations regarding his whereabouts and conduct immediately prior to the fire during the course of Nationwide's investigation. City Grill's position is that Nationwide failed to properly investigate and rule out the PCBs and, as such, improperly denied the claim based on an incomplete investigation. After the denial, the parties were unable to resolve the dispute and this lawsuit followed.

## DISCUSSION

**A. Standard of Review**

On a motion for summary judgment, the court must examine the evidence presented by both parties and determine if there is a need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Greater Balt. Ctr. for Pregnancy Concerns, Inc.* v. *Mayor & City Council of Balt.*, 721 F.3d 264, 283 (4th Cir. 2013). The court examines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). Where the moving party shows that the evidence is so one-sided that it should prevail as a matter of law, the burden shifts to the nonmoving party to come forward with affidavits, depositions, answers to interrogatories, or other evidence demonstrating that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986); *Matsushita*, 475 U.S. at 587; *Pension Ben. Guar. Corp. v. Beverly*, 404 F.3d 243, 246-47 (4th Cir. 2005). An issue of fact is genuine if a reasonable jury could find for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248. A fact is material if proof of the fact might affect the outcome of the case under the substantive law. *Id.* The facts should be viewed in the light most favorable to the nonmoving party and all reasonable inferences should be made in favor of the

5

nonmoving party. *Id.* at 255; *Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996).

**B. Spoliation**

City Grill's motion for summary judgment is predicated solely on its allegation of spoliation of the PCBs. City Grill alleges that Martini and Lacy had a duty to preserve the PCBs once they were identified as potential ignition sources and that the failure to preserve this evidence deprives City Grill of any opportunity to prove its case. As a sanction, City Grill requests that the court strike the expert reports and deposition testimony of Martini and Lacy or enter judgment in its favor.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). The duty to preserve extends to the period before litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation. *Id.* at 591; *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). However, in the event a party cannot fulfill his obligation to preserve because he does not own or control the evidence, "he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Silvestri*, 271 F.3d at 591. Although the Fourth Circuit has not definitively adopted the following factors, a number of district courts in this circuit approach spoliation motions by analyzing three factors: (1) the party with control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered

was relevant to the claims or defenses of the opposing party. *Goodman v. Praxair Servs. Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 520-21 (D. Md. 2010) (noting that district courts in the Second, Fifth, Sixth, Seventh, and Ninth Circuits have identified these factors).

Here, there is sworn, uncontradicted testimony in the record that Martini and Lacy left the PCBs in City Grill's possession when they completed their investigation. This fact precludes any finding of spoliation in this case.[4] First, it cannot be said that Nationwide failed to preserve evidence when it left the relevant evidence in the custody and control of the opposing party. *See Silvestri*, 271 F.3d at 591 (finding spoliation where the relevant evidence was not preserved and Defendant was given no notice of possible products liability claim and existence of relevant evidence). City Grill was indisputably on notice that any evidence related to the fire needed to be preserved, as City Grill itself initiated this lawsuit. As Nationwide notes, it cannot be held responsible for City Grill's own failure to preserve the evidence.

City Grill argues at length that Diamantopoulos could not have known the importance of safeguarding the PCBs. According to City Grill, Martini and Lacy were the fire investigation

---

[4] The court notes that it came across one sentence in City Grill's brief that suggests it might dispute Martini and Lacy's testimony that they left the PCBs in the restaurant: "but plaintiff has also raised the issue of whether or not Lacy deliberately destroyed probative evidence prior to the filing of its action and/or apparently made material misstatements in Lacy's Claims Report for the purpose of hiding the existence of the PCBs." City Grill's Mot. for Summ. J. [DE-32] at 12. The sentence is not accompanied by any citation to the record and the argument is not developed in any of the voluminous briefing in this case. Because City Grill is the moving party, it bears the initial burden of proof on the spoliation issue. *Celotex Corp.*, 477 U.S. at 323. It has failed to carry that burden with respect to any allegation that Martini and Lacy intentionally destroyed the PCBs. *See id.* (explaining moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidentiary record] which it believes demonstrate the absence of a genuine issue of material fact."). The court also considers any argument regarding intentional destruction waived. *See Long v. Teachers Ret. Sys.*, 585 F.3d 344, 349 (7th Cir. 2009) ("Unsupported and undeveloped arguments are waived.").

experts and they should have at a minimum notified Diamantopoulos that the PCBs should have been preserved. While it is true that a party "has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence[,]" *Silvestri*, 271 F.3d at 591, that principle only applies when the evidence is not actually in the possession or control of the opposing party. *See id.* (finding spoliation where plaintiff failed to notify defendant of existence and location of evidence and evidence was not in the custody or control of defendant); *King v. Am. Power Conversion Corp.*, 181 F. App'x 373, 377-78 (4th Cir. 2006) (same); *Victor Stanley*, 269 F.R.D. at 523 ("And, in [the Fourth Circuit], as well as the First and Sixth Circuits, the preservation duty applies not only when the evidence is in the party's control; there is also a duty to notify the opposing party of evidence in the hands of third parties.").

Thus, in this particular case the fact that Lacy and Martini failed to alert Diamantopoulos of the potential significance of the PCBs is largely beside the point. The legal standard for spoliation does not contemplate weighing the parties' respective understandings of what relevant evidence needs preservation. Instead, each party is charged with preserving evidence that it has in its custody and control. There is no evidence in this record that Martini and Lacy ever took custody or maintained control of the PCBs. Thus, no duty to preserve ever attached.

The court also agrees with Nationwide that even assuming Martini and Lacy had custody and control over the devices, they did not fail to preserve the evidence "with a culpable state of mind." *See Victor Stanley*, 269 F.R.D. at 520-21 (explaining that party must destroy or lose evidence with a culpable state of mind to find spoliation). As City Grill's own rebuttal expert opined, the accepted standard of care among fire investigation officials is that low voltage

8

devices such as the PCBs are not competent ignition sources. *See* Small et al. *Low Voltage: The Incompetent Ignition Source, Dispelling the Myth* [DE-21-8] at 4-5 ("This behavior is understandable as no definitive science, testing, or training has yet been offered to the fire investigation community that would familiarize investigators with the more subtle failure modes and fire causes of, and within, small scale electronic assemblies."). Thus, Martini and Lacy's failure to collect and preserve this evidence did not occur with a negligent state of mind. As City Grill's own expert admits, the scientific consensus in the fire investigation community is that low voltage devices are not competent ignition sources. Accordingly, Martini and Lacy's alleged failure to preserve this evidence did not fall below the standard of care.[5] *See Victor Stanley*, 269 F.R.D. at 529 (noting negligence "is the failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation." (internal quotation marks omitted)).

To summarize, the court finds that this is simply not a case of spoliation. The uncontradicted evidence in the record is that Martini and Lacy left the PCBs with City Grill. At that point, the duty to preserve the devices rested solely with City Grill, not Nationwide. In addition, there is simply no evidence that Martini and Lacy negligently failed to preserve the evidence. Thus, City Grill's motion for summary judgment [DE-31] and its request to suppress

---

[5] As City Grill notes, Martini testified that he was aware of Small's paper when he completed his investigation in this case. However, the existence of a single theoretical paper addressing the possibility that low voltage devices can cause fires hardly establishes the standard of care in the fire investigation community.

the Martini and Lacy reports, which are predicated solely on City Grill's spoliation theory,[6] are DENIED.

**C. Breach of the Covenant of Good Faith and Fair Dealing**

Under North Carolina law, a covenant of good faith and fair dealing is implied in every contract. *Bicycle Transit Auth. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985). As the North Carolina Supreme Court has explained, "[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Id.* (internal citation omitted). Accordingly, "[a]ll parties to a contract must act upon principles of good faith and fair dealing to accomplish the purpose of an agreement, and therefore each has a duty to adhere to the presuppositions of the contract for meeting this purpose." *Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005).

The court finds that most of the parties' arguments on this claim are largely irrelevant because the breach of contract claim in this case will proceed to trial. Because the covenant is an "implied term" of the contract between the parties, *see Bicycle Transit*, 314 N.C. at 228, 333 S.E.2d at 305, City Grill may present evidence regarding the alleged breach of the covenant and argue to the jury that Nationwide breached the contract by breaching the implied covenant. Of course, City Grill will not be entitled to a double recovery in these circumstances because the same factual allegations make out the breach of the covenant and breach of contract claims.

---

[6] In its summary judgment brief, City Grill also suggests it is entitled to partial summary judgment on the issue of coverage. City Grill did not move for summary judgment on its breach of contract claim. The issue of whether Nationwide properly denied coverage is the basic dispute in this case and the parties agree that material issues of fact preclude summary judgment on this issue. City Grill is not entitled to summary judgment on the issue of coverage.

10

*Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 19-20, 472 S.E.2d 358, 368-69 (1996). Nor can the covenant be used in a way that negates the express terms of the contract. *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 726 (M.D.N.C. 2012). Within these parameters, however, City Grill can pursue its allegation that the covenant has been breached.

However, because the same factual allegations support both claims, the court has decided to dismiss the stand-alone breach of the covenant claim in these circumstances.[7] *See B. Lewis Prods., Inc., v. Angelou*, No. 01Civ.0530MBM, 2005 WL 1138474, at *11 (S.D.N.Y. May 12, 2005) ("[T]he weight of North Carolina authority holds also that a claim for breach of the covenant of good faith and fair dealing based on facts identical to those supporting a breach of contract claim should not be pursued separately."); *Bicycle Transit*, 314 N.C. at 228, 333 S.E.2d at 305 (describing covenant as contract term implied by law). As noted above, City Grill may still present evidence, argue to the jury, and present jury instructions on its theory of breach of the covenant. However, it will have to confine its arguments within the context of how the breach of the covenant constitutes a breach of the contract. Thus, the parties' proposed jury instructions should not separately identify breach of the covenant as one of the claims at issue in this case. But within the proposed instructions regarding the breach of contract claim, the parties may present language explaining the covenant is an implied term of every contract and how breach of the covenant constitutes a breach of the contract.

---

[7] The court does not hold that a stand-alone claim for breach of the covenant can never be brought in North Carolina. *See Robinson v. Deutsche Bank*, No. 5:12-CV-590-F, 2013 WL 1452933, at *11 (E.D.N.C. April 9, 2013). It is only in these particular circumstances—where the same facts make out the breach of contract and breach of the covenant claims and the breach of contract claim is proceeding to trial—that the court finds the stand-alone claim duplicative of the breach of contract claim.

**D. Unfair and Deceptive Practices Act Claim**

City Grill concedes that Nationwide is entitled to summary judgment as to most of the allegations supporting this claim.[8] However, City Grill maintains that Nationwide's denial of coverage constitutes an unfair and deceptive settlement practice. This allegation reads "[Nationwide's] investigation and judgment of [City Grill's] insurance claim, its intentionally erroneous interpretation of the policy, and its refusal to comply with applicable statutes and regulations, and its refusal to provide additional benefits due under the terms of the policy constitute unlawful, unfair, and deceptive trade practices under [N.C. Gen. Stat. § 75-1.1 *et seq.*]." Compl. [DE-1] ¶ 36. It appears City Grill's evidentiary support for this allegation is Martini and Lacy's alleged failure to properly investigate and preserve the PCBs. *See* City Grill's Resp. to Nationwide's Mot. for Summ. J. [DE-43] at 4 ("In the case at bar, Plaintiff has consistently complained of Defendant's incomplete investigation of this . . . claim. Defendant was all too willing, in the name of 'savings' to jump to the conclusion that Plaintiff or an agent burned the Miami Subs premises.").

To establish an unfair and deceptive practice in violation of the act, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to the plaintiff. *Gray v. North Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). "When an insurance company engages in conduct manifesting an inequitable assertion of power or position, including conduct which can be characterized as unethical, that conduct constitutes an unfair trade practice." *Johnson v. First*

---

[8] This includes the claims arising out of Martini and Lacy's alleged conversion of the surveillance DVR.

*Union Corp.*, 128 N.C. App. 450, 458, 496 S.E.2d 1, 6 (1998) (internal quotation marks omitted). Although not required to maintain an unfair and deceptive practices act claim, courts often look to North Carolina's insurance law statutes to determine if a particular practice is unfair or deceptive within the meaning of the act. *Country Club of Johnston Cnty., Inc. v. U.S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 243-44, 563 S.E.2d 269, 277-78 (2002). As relevant here, North Carolina General Statute 58-63-15(11)(d) makes it unlawful for an insurance company to refuse "to pay claims without conducting a reasonable investigation." *Id.*

There is simply nothing unfair or deceptive about Nationwide's investigation in this case. As Nationwide notes, the record indicates Nationwide conducted a relatively extensive investigation of this claim. It hired third-party experts, interviewed multiple witnesses, took examinations under oath, discussed the case with law enforcement, and reviewed surveillance video. City Grill's only fault with the investigation is that Martini and Lacy failed to sufficiently investigate the PCBs. But, as explained above, City Grill's own rebuttal witness noted that the scientific consensus at the time of the investigation was (and is) that low voltage devices such as the PCBs are not competent ignition sources. *See* Small et al. *Low Voltage: The Incompetent Ignition Source Dispelling the Myth* [DE-21-8] at 4-5. Thus, Martini and Lacy's alleged failure to inspect those devices in detail and Nationwide's continued refusal to pay the claim based on Martini and Lacy's findings, while potentially giving rise to a breach of contract claim based on wrongful denial of coverage, are not sufficient to support a claim for unfair and deceptive trade practices. *See Dalton v. Camp*, 353 N.C. 647, 657, 548 S.E.2d 704, 711 (2001) (explaining a practice is only unfair or deceptive where "some type of egregious or aggravating circumstances" are present (internal quotation marks omitted)). Accordingly, Nationwide's motion for summary

13

judgment as to the unfair and deceptive practices act claim is ALLOWED and that claim is DISMISSED.

**E. Bad Faith Refusal to Settle**

The court reiterates that "bad faith refusal to settle" is not a separate claim for relief listed in the complaint. For some reason, the parties brief and argue the bad faith refusal to settle tort despite the fact that it is not part of the claims in this case. The court presumes the parties are referring to the allegations contained in paragraph thirty-three of City Grill's complaint, which alleges Nationwide's conduct in refusing to pay the claim was sufficiently malicious to state a claim for punitive damages under North Carolina law. However, that allegation is contained under City Grill's breach of the covenant of good faith and fair dealing claim and it does not even contain the words "bad faith refusal to settle." In future cases, counsel must clearly set out each claim for relief.

The tort of bad faith refusal to settle allows a party to recover punitive damages, in addition to compensatory damages, when an insurance company denies a valid claim in bad faith. *Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387, 394-95, 331 S.E.2d 148, 153-54 (1985). Refusals to pay "based on honest disagreement or innocent mistake" do not constitute bad faith. *See id.* at 396, 331 S.E.2d at 155.

Largely for the same reasons discussed above, the court finds that there is no evidence of bad faith on this record. Nationwide completed a relatively comprehensive investigation and denied the claim. City Grill has come forward with experts suggesting the PCBs were competent ignition sources, which contradicts the findings of Martini and Lacy. However, there is no scientific consensus in the fire investigation community that low voltage devices like the PCBs

are potential ignition sources. Furthermore, Martini and Lacy both now assert that they examined the PCBs and ruled them out as potential ignition sources. There is no evidence that this dispute is anything more than an honest disagreement between both parties' experts. As the court and counsel are painfully aware, expert disputes are routine in federal civil litigation. There is simply nothing in this record suggesting Nationwide denied the claim, as City Grill alleges, "maliciously, fraudulently, [and] with conscious disregard of [City Grill's] rights."[9] Compl. [DE-1] ¶ 33.

## CONCLUSION

Nationwide's motion for summary judgment [DE-27] is ALLOWED in its entirety. Except for the primary breach of contract claim and Nationwide's counterclaims, all of the claims in this case are DISMISSED. However, City Grill may pursue its breach of the covenant of good faith and fair dealing allegation as part of its breach of contract claim. City Grill's motion for summary judgment [DE-31] is DENIED.

The court reminds the parties that the pretrial conference order has been issued, *see* docket entry 63, and the parties must read and follow the instructions in that order carefully in preparation for the pretrial conference. The parties should also familiarize themselves with the undersigned's practice preferences, which may be found at http://www.nced.uscourts.gov/judges/preferences.aspx. After the pretrial order is finalized, the

---

[9] The court also rejects City Grill's argument that Nationwide's continued refusal to pay the claim after City Grill's experts raised the possibility that the PCBs caused the fire constitutes bad faith refusal to settle. Nationwide has sufficient evidence in this record to raise a triable issue of fact on the question of whether Diamantopoulos intentionally set the fire, thereby precluding coverage. Accordingly, Nationwide's refusal to award coverage after City Grill raised the possibility that the PCBs caused the fire constitutes at most an honest disagreement between the parties regarding coverage, not bad faith refusal to settle the claim.

15

court will issue a new order setting a hearing for ruling on evidentiary objections pretrial (to the extent possible) and addressing any *Daubert* matters. The order will also notify the parties of the deadline for submitting their proposed jury instructions.

The court also takes this opportunity to remind the parties of its procedure for scheduling civil trials. The trial in this matter is set for the May 12, 2014 term of court. However, because the undersigned does not hold separate civil and criminal terms, each term of court begins with approximately one week of criminal matters (*e.g.* arraignments, sentencings, etc.). This means civil trials typically do not begin until approximately one week after the term begins, which in this case is May 19. In the event a criminal defendant elects to plead not guilty at his scheduled arraignment, the court must complete the criminal trial before reaching any civil trials, due to statutory and constitutional speedy trial requirements. For this reason, the court will not know the definitive date that the trial will begin until approximately one week before the scheduled May 12 term. Due to the anticipated length of this trial, the court has been attempting to keep the last two weeks of May open for this trial. However, the court reiterates that it cannot predict with certainty the precise date the trial will begin until approximately one week before the term. If the parties must have a date certain before that time, they are free to consent to magistrate judge jurisdiction.

SO ORDERED.

This the 14 day of April, 2014.

                                                                                     *James C. Fox*
                                                                                JAMES C. FOX
                                                                                Senior United States District Judge